Peter John Sacripanti
John J. Calandra *(pro hac to be filed)*
Monica S. Asher *(pro hac to be filed)*
McDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, New York 10173
psacripanti@mwe.com
Telephone: (212) 547-5400
Facsimile: (212) 547-5444
*Attorneys for Plaintiff George E. Warren Corporation*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GEORGE E. WARREN CORPORATION**,<br><br>Plaintiff,<br><br>v.<br><br>**COLONIAL PIPELINE COMPANY,**<br><br>Defendant. | Civil No.: |

**COMPLAINT FOR INJUNCTIVE AND MONETARY RELIEF AND JURY DEMAND**

Plaintiff George E. Warren Corporation ("Plaintiff" or "GEW") submits this Complaint against defendant Colonial Pipeline Company ("Defendant" or "Colonial"), and in support states:

**NATURE OF THE CASE**

1. Colonial is a common carrier that owns, operates, and maintains a critical interstate pipeline that traverses thirteen states from Texas to New Jersey. GEW and other shippers use Colonial's pipeline to transport gasoline and other petroleum products.

2. By Colonial's own admission, Colonial does <u>not</u> own the products it transports in its pipeline on behalf of GEW and other shippers. Rather, Colonial only provides transportation services. The products that Colonial transports remain the property of the shippers. As a

1

common carrier, Colonial is simply the "bailee" of the products it transports and has no right to use or appropriate the products for its own benefit.

3. Despite this, Colonial told GEW that it, through a joint venture, is building a blending facility in Georgia to inject butane (a lower grade product that does not meet the specifications of gasoline) into the *shippers'* gasoline as the gasoline passes through the pipeline (*i.e.*, "in-line blending"). The blending facility (which is, upon information and belief, a joint venture with Magellan Midstream Partners, L.P., called Powder Springs Logistics LLC (the "Joint Venture")) will dilute the shippers' gasoline (which thereby degrades it) in order to create additional (*i.e.*, "excess") product *for Colonial* and/or its partners, which will then be sold for their profit.

4. Put differently, without authorization from GEW, Colonial intends to appropriate GEW's gasoline for Colonial's own profit (and/or that of its partners), in pursuit of a new commercial non-carrier related business venture, to the detriment of GEW, which will receive degraded, less valuable product and none of the excess product created with GEW's product. GEW is thus doubly harmed: (1) GEW receives product that is substantially degraded from what it injected into the pipeline, and (2) GEW is being denied the excess product created by Colonial and/or its partners using GEW's product, or the profits they earn from selling, directly or indirectly, that excess product.

5. By this lawsuit, GEW seeks a declaratory judgment that Colonial's announced plan violates the Carmack Amendment to the Interstate Commerce Act (the "Carmack Amendment") and otherwise amounts to a true conversion under common law. GEW seeks damages as well as an injunction to permanently enjoin Colonial's wrongful conduct.

## THE PARTIES

6. GEW is a corporation incorporated in the State of Massachusetts, with its principal place of business located at 3001 Ocean Drive, Suite 203, Vero Beach, Florida 32963. GEW is a buyer and seller of refined petroleum products on an international basis. GEW's operations include substantial facilities in Carteret, New Jersey and Perth Amboy, New Jersey, at which it "blends" gasoline. GEW regularly uses the Colonial Pipeline to transport its product from the Gulf Coast to New York Harbor (*i.e.*, to New Jersey). GEW's blending operation utilizes products that are shipped through the Colonial Pipeline. Colonial delivers GEW's product to GEW in Linden, New Jersey.

7. Upon information and belief, Colonial is a corporation incorporated in the State of Delaware, with its principal place of business located at 1185 Sanctuary Parkway, Suite 100, Alpharetta, Georgia 30009. Colonial's pipeline begins in Houston, Texas and terminates in Linden, New Jersey, which is where Colonial delivers GEW's product to GEW. The Colonial Pipeline consists of more than 5,500 miles of underground pipe and above-ground storage tanks and pump stations. Colonial maintains underground pipe and above-ground storage tanks and pump stations in Linden, New Jersey, among other places.

## JURISDICTION AND VENUE

8. An "actual controversy" exists between Plaintiff and Defendant, within the meaning of 28 U.S.C. § 2201: Colonial has taken substantial steps toward commencing its in-line blending operation, which GEW contends would violate the Carmack Amendment and constitute a true conversion of GEW's property.

9. This Court has diversity jurisdiction over this controversy pursuant to 28 U.S.C. § 1332, inasmuch as the object of this controversy and the declaratory judgment sought exceeds

the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity of citizenship as between Plaintiff and Defendant.

10. This Court also has federal question jurisdiction over this controversy pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1337, as a claim is made pursuant to the Carmack Amendment, 49 U.S.C. § 15906, for an amount in excess of $10,000.

11. Venue in this Court is proper pursuant to 28 U.S.C. § 1391, because the Defendant resides in this judicial district for venue purposes and a substantial portion of the events giving rise to the claim will occur in this judicial district, and pursuant to 49 U.S.C. § 15906 because Colonial operates a pipeline in this judicial district. In fact, Colonial will exercise dominion and control over, and thus misappropriate at least some of, the excess product in Linden, New Jersey, where the Colonial Pipeline terminates. GEW will also receive degraded product and be wrongfully denied the excess created from its product in Linden, New Jersey.

## FACTUAL BACKGROUND

12. Colonial owns, operates, and maintains a pipeline that transports petroleum products for shippers, including GEW. The pipeline begins in Houston, Texas, traverses thirteen states, and ends in Linden, New Jersey.

13. GEW injects petroleum products into the Colonial Pipeline in Houston, Texas, and at certain other points of entry along the pipeline, and removes product from the Pipeline in Linden, New Jersey.

14. When shippers inject petroleum products into the Colonial Pipeline, the products must meet certain minimum specifications. All shippers, including GEW, inject product into the pipeline that exceeds those minimum required specifications (as injecting product exactly at the

4

specifications would not be possible, as a practical matter).  Once GEW's product is inside of the pipeline, it is commingled with other shippers' product.

15.     Colonial does not own or take ownership of the product transported in its pipeline. As Colonial explains on the Frequently Asked Questions page of its website, "[t]he shipping companies" "own[] the petroleum being transported."  "[Colonial] neither buys nor sells petroleum products.  It provides transportation services only."

16.     Currently, and for at least the past 20 years, GEW, after removing its product from the Colonial Pipeline in Linden, New Jersey, transports its product to its facilities in New Jersey and then blends some of the product.  GEW's blending has been part of its operations for many years and has allowed GEW to create, and then sell, excess product created thereby.

17.     GEW also purchases product from other shippers, which it then blends at its facilities.

18.     Upon information and belief, other shippers engage in similar post-transport blending of the products that they ship on the Colonial Pipeline.

19.     GEW and others are able to engage in post-transport blending because the product Colonial transports for and delivers to GEW and other shippers at the end of the pipeline in New Jersey is above the minimum required specifications.

20.     Colonial has informed GEW that, beginning in early 2017, Colonial will use its control over the product it is transporting in its pipeline to allow in-line blending of the product it is transporting (*i.e.*, the *shippers'* product)  by the Joint Venture.  Specifically, Colonial will allow the Joint Venture to inject butane into the pipeline in Atlanta, Georgia, for the purpose of creating excess product using the shippers' own product, which excess product *Colonial and/or its partners* will retain for themselves.

21. Upon information and belief, Colonial hatched this plan after realizing that, through its control over its customers' product that it transports in its pipeline, Colonial could, directly or indirectly, engage in the same blending activity that GEW and its customers are engaging in, thereby diverting to Colonial and/or its partners the profits that its customers were otherwise making from selling the excess product they generated from their post-transport blending.

22. As a result of Colonial's intentional dilution of the product in its pipeline, the product that GEW will receive at the end of the pipeline will no longer be sufficiently above the minimum required specification to enable GEW to blend it for its own operations and sale, as it does now and has done in the past.

23. GEW will also be unable to blend product purchased from other shippers, as that product will have also been diluted by Colonial.

24. Thus, by wrongly misappropriating shippers' product for its own use, Colonial will, in effect, be stealing from GEW (and other shippers) the benefit that GEW (and other shippers) have historically been generating for themselves by blending their above-specification product.

25. Though it is anticipated by the Tariff – which sets the terms and conditions for the transportation of shippers' product – that the product injected by GEW and the other shippers may degrade slightly (resulting from the commingling of the product with other shippers' products and from traveling in the pipeline) it is *not* anticipated (nor allowed) that the carrier, Colonial, could willfully and intentionally degrade and dilute the shippers' product through the injection of butane for Colonial's own direct or indirect use and profit. It is also not anticipated (nor allowed) that Colonial could use its position as carrier, and its exclusive possession of the

product for transportation, as an opportunity to misappropriate the shippers' product to generate additional excess product – and therefore profit – for itself.

26.     Upon information and belief, Colonial and Magellan Midstream Partners, L.P., through the Joint Venture, have together invested millions of dollars in the construction of a butane in-line injection system in Atlanta, Georgia, in furtherance of this in-line blending operation.

27.     Colonial's planned in-line blending improperly exploits and abuses Colonial's unique and exclusive possession of GEW's product during transportation of the product in Colonial's pipeline, to generate a profit for Colonial and/or its partners.

## COUNT I
### (Declaratory Judgment/Damages – Carmack Amendment)

28.     GEW repeats and realleges each and every allegation contained in paragraphs 1 through 27 as though they were fully set forth herein.

29.     The Carmack Amendment imposes strict liability on carriers for any loss or injury to shippers' goods during transport, including transport by pipeline. 49 U.S.C. § 15906(a).

30.     The planned injection of butane into the pipeline by Colonial, directly or indirectly, will result in actual injury and loss to GEW's product, in violation of the Carmack Amendment.

31.     This intentional injury and loss to property, at the hands of and to the profit of Colonial and/or its partners, is a true conversion of GEW's property and is not authorized.

32.     GEW thereby seeks a declaration that Colonial's planned in-line blending violates the Carmack Amendment, and to the extent Colonial begins those planned operations, GEW also seeks damages, including, but not limited to, the profits GEW would have made had GEW been able to continue its own post-transport blending.

7

33.     There is an actual controversy between Colonial and GEW, as Colonial has refused to cease and desist from its planned conduct, has taken substantial steps towards implementing it, including the formation of a joint venture and investment in the construction of a facility to perform the in-line blending, and has taken the position that its conduct is lawful.

34.     A declaration by this Court of the parties' respective rights and duties will resolve the controversy.

## COUNT II
### (Alternative Claim for Declaratory Judgment/Damages – Conversion)

35.     GEW repeats and realleges each and every allegation contained in paragraphs 1 through 34 as though they were fully set forth herein.

36.     If the Court determines the conduct described above is outside the Carmack Amendment, then GEW seeks a declaration that Colonial's planned in-line blending amounts to a conversion of GEW's property and, to the extent Colonial begins those planned operations, GEW seeks damages from that conversion, including lost profits and punitive damages.

37.     A declaration by this Court of the parties' respective rights and duties will resolve the controversy.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff prays that judgment be entered in its favor and against the Defendant, to include:

(a)     Declaratory judgment declaring or determining that Colonial's planned in-line blending of the product that travels in its pipeline is a violation of Colonial's obligations under the Carmack Amendment to the Interstate Commerce Act, or in the alternative, is a conversion under common law;

(b) A permanent injunction enjoining Colonial from performing or allowing others to perform in-line blending in its pipeline;

(c) Damages, in an amount to be determined at trial, and including, but not limited to, an amount equal to the decreased value of GEW's product and GEW's lost profit as a result of Colonial's in-line blending, GEW's pro rata share of the profit made by Colonial and/or its partners from selling the excess product volume created through the in-line blending, and punitive damages; and

(d) Such other and additional relief as this Court deems just and proper.

Dated: New York, New York.
       February 21, 2017

Respectfully submitted,

McDERMOTT WILL & EMERY LLP


By:   /s/ Peter John Sacripanti
      Peter John Sacripanti
      John J. Calandra *(pro hac to be filed)*
      Monica S. Asher *(pro hac to be filed)*

340 Madison Avenue
New York, New York 10173
Telephone: (212) 547-5400
Facsimile: (212) 547-5444

*Attorneys for Plaintiff George E. Warren Corporation*